AFFIDAVIT

Comes the Affiant, Amy Hester, and after being duly sworn states as follows:

My name is Amy Hester and I am a registered nurse, licensed as an RN by the State of Arkansas. I am Board Certified in Medical-Surgical Nursing. Attached hereto is my Curriculum Vitae, which sets forth my education, training and professional qualifications. As a registered nurse, I am engaged in the same type of medical care as those individuals against whom I am providing my opinions.

As an RN licensed to practice in the State of Arkansas, and based on my training and personal experience, I am familiar with the standard of care for nurses (RN's and LPN's) with respect to the assessment of patients and formulation of nursing diagnoses and plans of care. I am further familiar with the standard of care as it relates to the care of patients with the same diagnoses as Juanita Lee.

In forming my opinions in this matter I have reviewed the medical record of Juanita Lee From St. Edward Mercy Medical Center dated 10/10/03 – 10/16/03.
The following information was noted in the medical records:

Mrs. Lee was a sixty six year old involved in a single car accident on 10/10/03 in which she fractured her right humerus, radius, and ulna. She was admitted to St. Edward Mercy Medical Center under the care of Dr. Robert Bebout, DO for repair of the fractures. She had a past medical history significant for high blood pressure, insulin dependant diabetes, stroke, and obesity. Her family history included a sister with a history of heart attack. On 10/10/03 Dr. Bebout consulted Dr. Mohsen Keyshian, MD to assist with Mrs. Lee's medical management and clearance for surgery which included a preoperative EKG that was normal.

Mrs. Lee underwent an open reduction and internal fixation of her fractures on 10/12/03.



EXHIBIT C

Physical therapy was consulted postoperatively and began therapy on Mrs. Lee on 10/13/03. During her first therapy session Mrs. Lee felt "woozy" as documented in the Ancillary Progress Notes. The nursing notes timed at 1015 indicate she got dizzy and felt bad during PT. At 2000 on the same evening Mrs. Lee's oxygen saturation dropped to 75%. She was placed on 3 liters of oxygen per nasal cannula with physician orders to titrate her oxygen to keep her saturation greater than 90%.

On 10/14/03 Mrs. Lee was again ambulated by physical therapy. The Ancillary Progress Notes indicate Mrs. Lee was ambulated 22 feet and got "dizzy/passout". The nursing assessment at 0945 stated she became diaphoretic, dizzy, and weak. Mrs. Lee was also hypertensive with a pressure of 195/72, tachycardic with a pulse of 101, and hyperglycemic with a blood sugar of 326. Her oxygen saturation was 92%. Her speech was noted as slow and slightly slurred. The nurse paged and spoke with Dr. Keyshian at 0945, and an order was entered at 1000 for a now chest x-ray and EKG. At 0955 Mrs. Lee was again noted to be diaphoretic, her eyes rolled back in her head and she failed to respond to verbal or physical stimulation. The nurse noted Mrs. Lee to be "non-responsive". The episode was documented as lasting approximately 30 – 45 seconds during which time her oxygen saturation dropped to 89%. At 1019 the now EKG was performed that was abnormal and suggested current septal injury.

On the same afternoon, Dr. Keyshian visited Mrs. Lee at 1300 during which time she became agitated, stated she did not feel well, and became unresponsive. Chest compressions were initiated after Dr. Keyshian determined Mrs. Lee had no pulse or heart sounds. Mrs. Lee again became responsive. She was placed on a non rebreather with an oxygen saturation of 89%. ABGs were drawn and an EKG repeated at 1317 which was significantly worse suggestive of acute anterior injury and possible global ischemia. A right bundle branch block was also

detected.

Mrs. Lee was then transferred to ICU at 1325. She arrived to intensive care at 1332. She was immediately noted to be in pulseless electrical activity and resuscitative efforts were begun that lasted until 1432. Unresponsive and ventilated throughout her ICU course, Mrs. Lee would later be diagnosed as having severe anoxic encephalopathy in addition to the myocardial infarction. She was determined to be brain dead, and on 10/16/03 Mrs. Lee's family requested termination of her life support. She was pronounced dead at 1112 on 10/16/03.

Based on my professional experience and a reasonable degree of nursing certainty it is my opinion the nursing staff of St. Edward Mercy Medical Center failed to provide nursing services consistent with the standard of care as follows:

1. On the night of 10/13/03 Mrs. Lee was assessed under St. Edward Mercy Medical Center's nursing protocol 940. This protocol initiated on 10/10/03 required patient assessment every eight hours. On the night of 10/13/03 this assessment was documented at 2000, 0400, and 0600 by Carol Cearley, LPN. All previous assessments under protocol 940 were performed by RNs. It was during this time that Mrs. Lee's oxygen saturation dropped to 75%, and she had to be started on oxygen therapy. There is no evidence from the record that Ms. Lee was provided any professional nursing assessment until 0015 the morning of 10/14/03. Mrs. Lee's condition at 2000 necessitated professional not practical nursing assessment and intervention. The entry regarding the event at 2000 on 10/13/03 was made as a late entry after a note timed at 0650 on 10/14/03. This indicates the RN did not have the proper documentation in the chart at the time of her assessment to evaluate the information and compare it to her own assessment. The physician was called

during the event at 2000, but there is no documentation to support that the LPN attempted to get professional nursing support and evaluation for Mrs. Lee.

2. The nurse failed to ensure timely performance of the now EKG and chest x-ray ordered at 0945. The physician's orders indicate she entered the order at 1000. The EKG was not done until 1019 and the chest x-ray at 1052. Standard of care for a patient in Mrs. Lee's condition warrants performance of these tests as soon as possible. There is no indication from the record the nurse attempted to expedite these tests.

3. After the EKG was performed at 1019 the nurse failed to alert the physician of the results. Mrs. Lee's preoperative EKG was normal. The EKG done the morning of 10/14/03 had changed significantly. It would have been imperative for the nurse to notify the physician immediately. Certainly, by this point it was evident that Mrs. Lee needed cardiac monitoring in a more supervised environment. It was the duty of the nursing staff to ensure the physician was aware of her condition and ensure Mrs. Lee was being provided the level of care she required.

4. The nursing staff failed to notify the physician at 0955 of Mrs. Lee's episode of becoming non responsive. During and after this episode there is no evidence that the nursing staff offered Mrs. Lee anything more than assistance back to bed and a cool wash rag for her forehead. Again, the physician should have been notified immediately, and Mrs. Lee should have been placed back on her oxygen. Clearly Mrs. Lee was increasingly symptomatic for a reason. No efforts were made on her behalf to determine the etiology of these events or to provide closer monitoring by professional nursing staff or any other means that was warranted by her condition.

5. During the 1200 hour Mrs. Lee's pulse was documented as 106 on the Graphic Sheet.

There is no indication the staff notified the physician or attempted to follow up on this recording in any way. Efforts should have been made to prevent tachycardia in Mrs. Lee given that she had two significant episodes earlier that morning and given the changes in her EKG. This was necessary to minimize her cardiac oxygen demands.

6. The nursing staff failed to appropriately monitor Mrs. Lee's condition during and after her apparent cardiac arrest at 1300 on 10/14/03. There is no evidence in the record of Mrs. Lee's vital signs being monitored or any evidence of what support staff was utilized to assist her. The record reflects Mrs. Lee was placed on a non re-breather and had an oxygen saturation of 89%. This is a sub-optimal saturation for a patient in Mrs. Lee's condition. The nursing staff should have continually monitored her vital signs, cardiac rhythm, and oxygen saturation beginning with Mrs. Lee's arrest and continuing thereafter. These were necessary to ensure adequate oxygenation and tissue perfusion of Mrs. Lee.

7. There is no evidence that supportive measures were in place during Mrs. Lee's transport to ICU at 1325. There is no documentation of the personnel present during transfer, Mrs. Lee's condition during transfer, or what if any supportive measures were given Mrs. Lee such as cardiac monitoring, saturation monitoring, or oxygen therapy. Mrs. Lee's transport necessitated adequate and qualified personnel. It required continuous cardiac and saturation monitoring and continuation of respiratory support with oxygenation. There is no evidence Mrs. Lee's requirements were met during her transfer to ICU which took seven minutes, after which Mrs. Lee was again coded immediately on arrival.

8. The nursing staff failed to provide qualified nursing support during all of the events that took place the morning and into the afternoon of 10/14/03. All of the narrative

documentation entered by the nursing staff was done by Chloe Cluck, LPN. All of the orders entered at that same time were entered by Chloe Cluck, LPN. The patient assessment of protocol 940 was again completed by the LPN at 0800. There is an RN signature recorded at 0850 on the Interdisciplinary Care Record, Part A. However, there is no evidence that Ms. Lee was ever seen or evaluated by the RN after that time, and there is no evidence that the LPN had the direct supervision or support from the RN at anytime thereafter. The care required by Mrs. Lee took substantial specialized skill, judgment, and knowledge. Her care should not have been delegated to an LPN. Doing so was a violation of the Rules and Regulations for Registered Nurses as set forth by the Arkansas State Board of Nursing and the Arkansas Nurse Practice Act. The performance of the LPN during the care provided to Mrs. Lee was also in violation of these regulations by practicing beyond her scope as set forth by the Arkansas State Board of Nursing Position Statement 95-1 Scopes of Practice. This improper delegation and acceptance of the care of Mrs. Lee caused her to be without the benefit of qualified nursing assessment and observation necessary to ensure that she received the care necessitated by her condition. This situation caused severe and unnecessary delay in her care and treatment. All of the above failures to meet the standards of nursing care are also in violation of the Code of Ethics for Nurses as set forth by the American Nurses Association. It is the duty of all nurses to promote, advocate for, and protect the health, safety, and rights of the patient. Mrs. Lee was not given this benefit when she most needed it. As a result Mrs. Lee suffered severe and irreversible consequences of the delay and lack of treatment from the nursing staff of St. Edward's Mercy Medical Center.

Any opinions expressed herein are based on the records that I have reviewed. I may have additional opinions or need to modify existing opinions once depositions have been taken.

Further the Affiant Sayeth Not

Amy Hester

Date: 9/15/05

STATE OF ARKANSAS )
)
COUNTY OF Saline )

Subscribed and sworn to before me, a notary public, on this 15th day of September, 2005.
My commission expires:

Jan. 2, 2013

Notary Public